Exhibit 1

NORTH CAROLINA      FILED    IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
PITT COUNTY      2021 JUN -2 P 1:44      21-CVS-11615

PITT CO., C.S.C.

TIFFANY WEST-BRIDGERS, )
Individually and as General Guardian of )
ANYA LATIA BRIDGERS, an incompetent )
)
     Plaintiff, )
)
vs. ) **COMPLAINT**
)
QUORUM HEALTH CORPORATION, )
QUORUM HEALTH RESOURCES, LLC, )
WILLIAMSTON HOSPITAL CORPORATION, )
WILLIAMSTON CLINIC CORP., )
MELISSA G. O'NEAL, MD and )
MICHAEL S. GRIFFITH, CRNA, )
)
     Defendants. )

     Plaintiff Tiffany West-Bridgers, individually and as General Guardian of Anya Latia Bridgers, by and through undersigned counsel, complaining of the defendants, alleges and says as follows:

## PARTIES AND JURISDICTION

1. Plaintiff Tiffany West-Bridgers, a citizen of Greenville, Pitt County, North Carolina, is the natural mother of Anya L. Bridgers. Plaintiff is also the duly appointed Guardian of Anya L. Bridgers, an incompetent ("Anya"). This appointment occurred on October 12, 2020. Plaintiff provides daily care for Anya as a result of the injuries she sustained on February 26 and February 27, 2019 due to the negligence of the defendants, as alleged herein. Plaintiff also brings this action in her individual capacity for medical expenses incurred prior to Anya's 18th birthday.

2. Plaintiff alleges the following paragraphs 3 through 22 upon information and belief:

3. Defendant Quorum Health Corporation is a corporation organized and existing under the laws of the state of Delaware with its principal place of business located in Brentwood, Tennessee. At all relevant times, Quorum Health Corporation was also known as and/or doing business as Quorum Health Resources, LLC, Williamston Hospital Corporation, Williamston Clinic Corp., and/or Martin General Hospital. Quorum Health Corporation

may be served via its registered agent: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

4. Defendant Quorum Health Resources, LLC is a corporation organized and existing under the laws of the state of Delaware with its principal place of business located in Brentwood, Tennessee. Quorum Health Resources, LLC is registered in North Carolina and, at all relevant times, was also known as and/or doing business as Quorum Health Corporation, Williamston Hospital Corporation, Williamston Clinic Corp., and/or Martin General Hospital. Quorum Health Resources, LLC is authorized to transact business in North Carolina, is registered as a foreign entity with the North Carolina Secretary of State. Quorum Health Resources, LLC may be served via its registered agent in North Carolina: CT Corporation System, 160 Mine Lake Ct Ste 200, Raleigh, North Carolina 27615-6417.

5. Defendant Williamston Hospital Corporation is a corporation organized and existing under the laws of the state of North Carolina with its principal place of business located in Williamston, North Carolina. At all relevant times herein, Williamston Hospital Corporation was also known as and was doing business as Martin General Hospital, located at 310 S. McCaskey Road, Williamston, NC 27892 and/or as Roanoke Women's Healthcare, located at 104 Medical Dr., Williamston, NC 27892. At the time of the events described herein, Roanoke Women's Healthcare was in a separate building right next to the hospital. Williamston Hospital Corporation may be served via its registered agent in North Carolina: CT Corporation System, 160 Mine Lake Ct Ste 200, Raleigh, North Carolina 27615-6417.

6. Defendant Williamston Clinic Corp. is a corporation organized and existing under the laws of the state of North Carolina with its principal place of business located in Williamston, North Carolina. At all relevant times herein, Williamston Clinic Corp. was also known as and was doing business as Roanoke Women's Healthcare, located at 104 Medical Dr., Williamston, NC 27892 and/or as Martin General Hospital, located at 310 S. McCaskey Road, Williamston, NC. Williamston Clinic Corp. may be served via its registered agent in North Carolina: CT Corporation System, 160 Mine Lake Ct Ste 200, Raleigh, North Carolina 27615-6417.

7. Defendants Quorum Health Corporation, Quorum Health Resources, LLC, Williamston Hospital Corporation and Williamston Clinic Corp. are sometimes collectively referred to herein as the "Corporate Defendants."

8. At all relevant times, the Corporate Defendants were in the business of providing healthcare, including services in obstetrics and anesthesia.

9. At all relevant times herein, the Corporate Defendants performed medical tasks in the field of obstetrics and anesthesia.

2

10. At all relevant times, the Corporate Defendants owned, operated, leased, administered, controlled, and/or managed Martin General Hospital and Roanoke Women's Healthcare, and established policies and procedures pertaining to the provision of healthcare at these entities, including services in obstetrics and anesthesia.

11. At all times relevant to this action, the Corporate Defendants and their employees, agents and servants were "healthcare providers" as defined by N.C. GEN. STAT. § 90-21.11.

12. At all relevant times herein, the Corporate Defendants held themselves out to Plaintiff and to Anya Bridgers, who was a minor at the time of service, and to the general public as being fully licensed and an accredited healthcare facility providing quality patient care at the level of either acute healthcare facilities in Martin County, North Carolina, or other similar communities.

13. At all times relevant herein, the Corporate Defendants expressly and impliedly represented to Plaintiff and to Anya Bridgers, who was a minor at the time of service, and to the general public that they had the ability to accept and care for obstetric patients, including labor and delivery, C-section deliveries, anesthesia and complications arising during labor and delivery and that their physicians, staff, employees, agents, and servants, including specifically its obstetrical providers and its anesthesia providers were properly trained and qualified to care for and treat such individuals.

14. At all relevant times herein, the Corporate Defendants expressly and impliedly represented to Plaintiff and to Anya Bridgers, a minor at the time of service, and to the general public that they possessed the property facilities, equipment, skilled personnel, and services, including specifically labor and delivery services and anesthesia services, to care for, treat, handle, manage, and respond to patients delivering babies both by vaginal and C-section deliveries, and to complications that may arise.

15. Defendant Melissa G. O'Neal, M.D. ("Dr. O'Neal") is a citizen and resident of Martin County, North Carolina. At all relevant times herein, Dr. O'Neal was a medical doctor licensed to perform medical acts, tasks, and functions under the laws of the state of North Carolina. Dr. O'Neal now practices obstetrics and gynecology in Washington, Beaufort County, North Carolina.

16. At all relevant times herein, Dr. O'Neal performed medical tasks in the field of obstetrics and anesthesia supervision and guidance.

17. At all relevant times herein, Dr. O'Neal held herself out as being an expert and specialist in the field of obstetrics with the ability to manage and recommend appropriate birth and anesthesia choices and decisions and to manage anesthesia complications during the course of deliveries with similar planning, special knowledge and skill possessed by other obstetricians in her locality or similar localities with the same or similar training and experience.

3

18. At all relevant times herein, Dr. O'Neal was an employee, agent, apparent agent, borrowed servant and/or servant of the Corporate Defendants and all her acts and omissions as set forth herein and relevant to this case were performed within the course and scope of her employment, agency and/or servitude with the Corporate Defendants. Therefore, the Corporate Defendants are liable for any and all negligent acts and/or omissions of Dr. O'Neal as set forth more fully herein.

19. Defendant Michael S. Griffith, CRNA ("CRNA Griffith, ") is a citizen of and resident of Lyman, South Carolina. At all relevant times herein, CRNA Griffith was licensed as a Certified Registered Nurse Anesthetist ("CRNA") to perform certain nursing, anesthesia, and/or certain medical tasks, acts, and functions under the laws of the state of North Carolina.

20. At all relevant times herein, CRNA Griffith performed medical tasks in the field of anesthesia and held himself out as being an expert and specialist in the field of a certified registered nurse anesthetist.

21. At all relevant times herein, Dr. O'Neal served as CRNA Griffith's primary supervising physician. As CRNA Griffith's supervising physician, Dr. O'Neal assumed responsibility for the activities, actions, and omissions of CRNA Griffith as alleged herein. There was no supervising anesthesiologist in attendance at any time medical care was rendered to Anya.

22. At all relevant times herein, CRNA Griffith was an employee, agent, apparent agent, borrowed servant and/or servant of the Corporate Defendants and Dr. O'Neal and all of his acts and omissions as set forth herein and relevant to this case were performed within the course and scope of his employment, agency and/or servitude with the Corporate Defendants and Dr. O'Neal. Therefore, the Corporate Defendants and Dr. O'Neal are liable for any and all negligent acts and/or omissions of CRNA Griffith as set forth more fully herein.

## FACTS

23. The allegations in the above paragraphs are hereby incorporated by reference.

24. On or about January 23, 2019 Anya Bridgers, age 16, born October 29, 2002, established a patient physician relationship with Roanoke Women's Healthcare and began prenatal care for birth with the expected date of delivery on February 25, 2019 and date of LMP believed to be May 21, 2016.

25. Prenatal visits and care continued on January 30, February 6, February 13, February 21, 2019. On February 25, 2019, Dr. James Harbin at Roanoke Woman's Healthcare recommended admission to Martin General Hospital for induction and augmentation of labor the following morning.

26. On the morning of February 26, 2019, at 6:40 a.m., Anya Bridgers, accompanied by her mother, Tiffany West-Bridgers, was admitted to labor and delivery at Martin General Hospital. Anya was 16 years of age and in excellent health. This was her first pregnancy.

4

27. Following Anya's admission to labor and delivery, defendant Dr. O'Neal took over the management of labor and delivery for the term pregnancy of Anya Bridgers baby.

28. Throughout the day, Anya's vital signs were mostly normal with slightly elevated blood pressure at times with some edema, and normal lab values.

29. At approximately 1:45 p.m., Anya's membranes were artificially ruptured showing clear fluid. Pitocin was administered to augment Anya's labor.

30. Starting at approximately 3:10 p.m. for pain medication, Nubain was administered to Anya for pain control. Then, at approximately 5:50 p.m. an epidural of lidocaine for contraction pain management was given by CRNA Griffith, on the order of defendant Dr. O'Neal by defendant CRNA Griffith at level T-6 Xyphoid. At 10:10 p.m. another bolus of lidocaine was administered by CRNA Griffith.

31. Sometime prior to 10:00 p.m., Dr. O'Neal left the hospital, even though she had a youthful patient undergoing Pitocin induction and augmented labor. CRNA Griffith also was not present. At about 10:00 p.m., the nurse attending to Anya summoned Dr. O'Neal to the hospital. Dr. O'Neal then requested that CRNA Griffith return to the hospital.

32. The epidurals that were administered to Anya failed to provide adequate pain control. At 10:45 p.m., Dr. O'Neal called CRNA Griffith to check the epidural and re-bolus the pain medication.

33. Around midnight, Dr. O'Neal recommended that Anya undergo Caesarean section due to lack of progress in labor. Anya consented and was taken to the operating room. Tiffany was told to wait outside the operating room while Anya was prepped for surgery. After waiting 10 to 15 minutes, Tiffany was admitted into the operating room by a nurse. Dr. O'Neal was preparing to perform the Caesarean section.

34. At 12:15 a.m., it was noted that the epidural was still not working, despite the large quantity of pain medication given to Anya via the epidural. At 12:34 a.m., Anya was noted to be lethargic.

35. Despite obvious lethargy noted at 12:34, CRNA Griffith began administration of anesthesia for a spinal block at that time. 12 mg of bupivacaine and .3 mg of PF morphine were administered. As a result, Anya suffered what is known as a "high spinal" or "complete spinal", meaning that there is extensive and excessive intrathecal spread of anesthesia, causing respiratory depression, bradycardia, and cardiovascular failure. This is a well-known consequence of administering spinal anesthesia after failed epidural pain control with repeated dosing.

36. When Tiffany arrived at the head of the bed, she immediately noticed that Anya was gasping, and her eyes had rolled back in her head. Tiffany had been told that Anya would be awake and alert during the procedure and was therefore startled by her daughter's appearance.

5

Tiffany asked aloud, "what is wrong with her?" Neither Dr. O'Neal nor CRNA Griffith seemed to have noticed Anya's distress at that point. Shortly thereafter, Dr. O'Neal extracted Anya's baby and CRNA Griffith finally called for a Rapid Response Team. The delivery of Anya's baby occurred around 1:00 a.m.

37. Dr. O'Neal and CRNA Griffith's inattention to Anya meant that resuscitation was delayed so long that Anya suffered a severe and permanent anoxic brain injury because she was deprived of oxygen following bradycardia and hypotension brought about by the improper and excessive administration of anesthesia agents and the significant delay of resuscitative efforts.

## FIRST CLAIM FOR RELIEF
(Negligence as to Dr. O'Neal)

38. The allegations in the above paragraphs are hereby incorporated by reference.

39. Dr. O'Neal had the duty to Anya to provide obstetrical and medical services in accordance with applicable standards of practice; to exercise reasonable care and diligence in providing care and treatment to Anya; and to exercise her best medical judgment for Anya's benefit. Dr. O'Neal failed in all three respects to fulfill her duties of care to Anya. Dr. O'Neal further had the duty of obtaining informed consent which she failed to do because she did not disclose that no anesthesiologist would attend to Anya.

40. Dr. O'Neal was negligent, and her negligence was a proximate cause of Anya's permanent anoxic brain injury, in the follow ways:

    a. She failed to observe and pay attention to the condition of her patient during the administration of spinal anesthesia and performance of Caesarean section;

    b. She failed to properly supervise CRNA Griffith during his administration of spinal anesthesia and failed to recognize that CRNA Griffith had caused the anesthesia to be administered into Anya's spine after a failed epidural with several boluses of pain medication, causing her to suffer bradycardia and cardiopulmonary arrest;

    c. She failed to recognize that Anya had suffered a high spinal anesthesia or total spinal anesthesia hemodynamic instability and respiratory depression, which ultimately led to cardiopulmonary arrest;

    d. She failed to prepare for and take prompt and appropriate action to provide resuscitation to Anya;

    e. She failed to heed alarms;

    f. She failed to confirm audible alarms;

6

g. She failed to advise Anya or her mother that no anesthesiologist would be in attendance during her labor and delivery, instead representing that the CRNA would be supervised by an anesthesiologist; and

h. She was otherwise careless and negligent.

## SECOND CLAIM FOR RELIEF
(Negligence as to CRNA Griffith)

41. The allegations in the above paragraphs are hereby incorporated by reference.

42. CRNA Griffith had a duty to Anya to provide anesthesia and medical services in accordance with applicable standards of practice; to exercise reasonable care and diligence in provide anesthesia and medical services to Anya; and to exercise his best medical judgment for Anya's benefit. CRNA Griffith failed in all three respects to full his duties of care to Anya.

43. CRNA Griffith was negligent, and his negligence was a proximate cause of Anya's permanent anoxic brain injury, in the following ways:

a. He administered spinal bupivacaine and morphine after several failed epidurals with repeated bolus doses causing Anya to suffer a high spinal or total spinal anesthesia, resulting in hemodynamic instability and respiratory depression leading to cardiopulmonary arrest;

b. Because of a lack of attention to his patient and failure to recognize the danger of a spinal anesthesia block after a failed epidural with several re-boluses of medication, he failed to properly observe Anya and recognize her bradycardia, hypotension, and cardiac arrest due to her untoward response to anesthesia;

c. He failed to properly and effectively communicate to Dr. O'Neal about Anya's declining blood pressure, bradycardia, and her impending cardiopulmonary arrest;

d. He failed to plan for and take prompt action to provide resuscitation to Anya such that her cardiac arrest resulted in prolonged lack of oxygen to her brain and permanent anoxic brain injury after causing her to sustain a high spinal or total spinal anesthesia;

e. He failed to heed alarms;

f. He failed to confirm audible alarms; and

g. He was otherwise careless and negligent.

## THIRD CLAIM FOR RELIEF
(Vicarious liability, agency, and *respondeat* superior)

44. The allegations in the above paragraphs are hereby incorporated by reference.

45. Both Dr. O'Neal and CRNA Griffith at all times acted within the course and scope of their agency, employment, and apparent agency of the Corporate Defendants. Hence, the negligence of Dr. O'Neal and CRNA Griffith is imputed by *respondeat* superior to the Corporate Defendants.

46. In addition, at all relevant times, CRNA Griffith acted as the agent and borrowed servant of Dr. O'Neal as well as the Corporate Defendants, and within the course and scope of the borrowed agency and servancy, so that Dr. O'Neal as well as the Corporate Defendants are liable for his negligence.

## COMPENSATORY DAMAGES

47. The allegations in the above paragraphs are hereby incorporated by reference.

48. As a result of the combined negligence of the defendants, Anya suffered an anoxic brain injury that was entirely preventable. Anya's permanent brain injury has left her bedridden, unable to walk or talk, and dependent on others for her care and survival for the rest of her life. She must be fed and toileted, cleaned, and diapered. She was only sixteen years of age when she received this grievous injury. She was an intelligent and physically healthy young girl who will never be able to care for or even know her daughter, experience the joys of motherhood, or experience any of the joys and pleasures of life.

49. As a result of the defendants' negligence as further outlined herein, Anya suffered severe and permanent injuries to her mind and body. Her injuries and damages include, but are not limited to, past, present, and future medical expenses; past, present, and future physical pain; past, present, and future mental suffering and anguish; permanent disfigurement; permanent loss of use of part of the body; past, present and future embarrassment; loss of earnings and earning capacity; cost of services; and past, present and future loss of enjoyment of her life.

50. The injuries caused by the Defendants' negligence, as herein alleged, required and will continue to require Anya to receive and undergo various medical treatments. A portion of the medical expenses for past medical treatments occurred while Anya was a minor. Plaintiff Tiffany West-Bridgers, individually and as Anya's mother, was responsible for the expenses associated with all medical treatment provided to Anya prior to Anya's 18th birthday. As a direct and proximate cause of the Defendants' combined negligence, as herein alleged, Plaintiff Tiffany West-Bridgers, individually and as General Guardian of Anya Latia Bridgers, is entitled to recover past and future costs and expenses associated with the medical treatment rendered to Anya since February 27, 2019.

51. Consequently, Plaintiff Tiffany West-Bridgers, individual and as General Guardian of Anya Latia Bridgers is entitled to recover damages on Anya's behalf from the Defendants in an amount in excess of $25,000.00.

## N.C.R.CIV. PRO. 9(J)

52. The allegations in the above paragraphs are hereby incorporated by reference.

53. Pursuant to Rule 9(j) of the Rules of Civil Procedure, the medical care of the Defendants and all medical records pertaining to the negligence of the Defendants that are available to Plaintiff after reasonable inquiry has/have been reviewed by a person or persons who is/are reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is/are willing to testify that the medical care did not comply with the applicable standard of care. In addition, should a Court later determine that anyone who has reviewed the medical care of the defendants does not meet the requirements of Rule 702(b) or 702© of the Rules of Evidence, then Plaintiff will seek to have such person(s) qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence, and Plaintiff moves the Court (as provided in Rule 9(j) of the Rules of Civil Procedure) that such person(s) be qualified as an expert witness under Rule 702(e) of the Rules of Evidence.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays of the Court as follows:

(1) That the Plaintiff have and recover from the Defendants, jointly and severally, a sum exceeding $25,000.00 for compensatory damages;

(2) That all issues of fact be tried to a jury;

(3) That all costs, interest, and expenses be taxed to the Defendants;

(4) That the Plaintiff have and recover from the Defendants, jointly and severally, costs, interests and attorneys' fees as allowed by law; and

(5) That the Court order such other and further relief as it may deem just and proper.

This the 26th day of May, 2021.

*W. K. Moser* (signature)

W. Thompson Comerford, Jr.
N.C. State Bar No. 6089
John Kenneth Moser
N.C. State Bar No. 29357
Attorneys for Plaintiff

OF COUNSEL:

COMERFORD CHILSON & MOSER, LLP
250 West First Street Suite 200
Winston-Salem, North Carolina, 27010
Telephone:   (336) 631-8510
Facsimile:   (336) 631-8228

*W. K. Moser* (signature) *for and with permission from*

Stephen C. Swain
N.C. State Bar No. 4246
Attorney for Plaintiff

OF COUNSEL:

RULOFF SWAIN HADDAD MORECOCK
    TALBERT & WOODWARD, PC
317 30th Street
Virginia Beach, VA 23451
Telephone:   (757) 671-6000
Facsimile:   (757) 671-6004
Email:   scswain@srgslaw.com