# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| WILLIAMSTON HOSPITAL CORPORATION[1], | ) | Case No. 23-11058-BLS |
| | ) | |
| Debtor. | ) | Hearing date: January 15, 2025 |
| | ) | Response deadline: January 1, 2025 |

## AGREED MOTION OF THE UNITED STATES TO LIFT THE AUTOMATIC STAY TO PERMIT SETOFF

The United States of America (the "United States"), on behalf of the Centers for Medicare & Medicaid Services ("CMS"), which administers the Medicare program on behalf of the Department of Health and Human Services ("HHS"), and together with the Trustee (the "Parties"), moves (the "Motion") this Court to lift the automatic stay to permit CMS to setoff prepetition monies it owes Williamston Hospital Corporation ("Debtor") against prepetition Medicare overpayments Debtor owes CMS. In support of its Motion, the United States respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C §§ 1334 and 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.

2. Venue is proper in this District, pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This matter is a core proceeding, pursuant to 28 U.S.C. §§ 157(b)(2)(B), (b)(2)(G). Pursuant to Local Bankruptcy Rule 9013-1, the United States consents to the entry of final orders

---

[1] The last four digits of Debtor's federal tax identification number are 9107. Debtor's mailing address is 1573 Mallory Lane, Suite 100, Brentwood, TN 37027.

or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

4. On August 3, 2023 (the "Petition Date"), Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court for the District of Delaware.

5. Following the Petition Date, the United States Trustee for the District of Delaware appointed Don A. Beskrone to serve as interim Chapter 7 Trustee in this case (the "Trustee").

6. A meeting of creditors under and pursuant to 11 U.S.C. § 341(a) was held and concluded on August 30, 2023. Mr. Beskrone thus serves as the Trustee of the Debtor and its estate pursuant to 11 U.S.C. § 702(d).

7. On January 30, 2024, CMS filed claim number 66 (the "Claim") and the supporting Declaration of Lorelei J. Piantedosi (the "CMS Decl.").

8. Before bankruptcy, Debtor entered into a Medicare Provider Agreement with CMS to receive payment for services provided to Medicare beneficiaries under the Social Security Act, 42 U.S.C. § 1395-1395lll ("Medicare Statute") and 42 C.F.R. Chapter IV and CMS policies and procedures (collectively, the "Medicare Program"). *See* CMS Decl. ¶ 4.

9. Within five months after the end of each Medicare cost year, Debtor must submit a report to a CMS Medicare Administrative Contractor ("MAC"). 42 C.F.R. §§ 413.1, 413.20, 413.24(f); *see* 42 U.S.C. §§ 1395g and 1395hh (giving HHS authority to require submission of cost reports). Once submitted, the MAC audits the cost report and determines Debtor's actual, rather than estimated, reimbursement for the year, which can result in overpayments (an amount due CMS) or underpayments (an amount due Debtor). 42 U.S.C. §§ 1395g; 1395x(v)(1)(A)(ii); 42 C.F.R. § 413.24.

10. In particular, the Claim and supporting documents identified prepetition overpayments totaling $1,144,931.57 in principal owed by Debtor (the "<u>Prepetition Overpayments</u>"). CMS Decl. ¶ 9. As of the filing of the Claim, CMS identified $67,737.89 due to Debtor on account of prepetition services ("<u>Prepetition CMS Accounts</u>"). CMS Decl. ¶ 10. Pursuant to *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995), CMS administratively froze the Prepetition CMS Accounts.

11. As of the date of this Motion, the Prepetition Overpayments are $44,095.47, while the Prepetition CMS Accounts are currently $3,065,990.79. CMS has begun the process of releasing the difference between the Prepetition CMS Accounts and the Prepetition Overpayments to Debtor.

12. By this Motion, CMS seeks to setoff the Prepetition CMS Accounts against the Prepetition Overpayments. The Trustee has expressed his consent to such setoff; *however*, the Trustee's consent is given with the express understanding (and agreement by CMS) that all rights, arguments and objections of the Trustee, the Debtor and the estate regarding the Prepetition Overpayments, the Claim and the Prepetition CMS Accounts, including the amount and validity of any of the foregoing, are fully reserved, and nothing in this Motion and/or any order approving the Motion shall have any res judicata or other preclusive effect thereon. In the event it is determined by the Parties or the Court that the Debtor/estate is owed monies the United States agrees to disgorge any funds previously setoff and/or otherwise account for (and pay) the same in satisfying its obligations to the Debtor/estate.

# ARGUMENT

## I. CMS Is Entitled To Setoff Mutual Prepetition Debts.

13. Pursuant to a *Strumpf* freeze, CMS has been holding the Prepetition CMS Accounts. The United States now seeks this Court's authorization to allow CMS to set off, in accordance with 11 U.S.C. § 553, the Pre-Petition CMS Accounts against the Pre-petition Overpayments. Section 553(a) provides that:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . .

11 U.S.C. § 553(a).

14. Section 553(a) of the Bankruptcy Code preserves a creditor's right to set off mutual debts so long as both debts arose before the commencement of the bankruptcy case. *See In re University Medical Center*, 973 F.2d 1065, 1079 (3d Cir. 1992). "Setoff, in effect, elevates an unsecured claim to secured status, to the extent that the debtor has a mutual, prepetition claim against the creditor." *Id.* (quoting *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984)). The Bankruptcy Code recognizes and preserves non-bankruptcy setoff rights. *See, e.g.*, *Strumpf*, 516 U.S. at 18.

15. Here, the Medicare statute and regulations provide CMS and its MACs an express right to collect Medicare overpayments through setoff. *See* 42 U.S.C. §§ 1395g(a), 1395gg(b), 1395l(j); 31 U.S.C. § 3716; 42 C.F.R. §§ 405.371-405.373, 421.110(b)(2), 421.200(d); *see also In re Metropolitan Hosp.*, 110 B.R. 731, 741 (Bankr. E.D. Pa. 1990) (noting that the Medicare statute incorporates Medicare's statutory right of setoff), *aff'd* 131 B.R. 283 (E.D. Pa. 1991). The United States also has a common law setoff right that exists independent of any statutory setoff right. *See*

*In re Chateaugay*, 94 F.3d 772, 778-79 (2d Cir. 1996) (noting government's common law right to setoff); *Turner v. Small Business Administration*, 59 F.3d 1041, 1044 (10th Cir. 1995); *United States v. Tafoya*, 803 F.2d 140, 141 (5th Cir. 1986); *In re Nuclear Imaging Systems*, 260 B.R. 724, 733-34 (Bankr. E.D. Pa. 2000).

16. Setoff is a creditor's equitable right to deduct a debt it owes to the debtor from a claim it has against the debtor arising out of a separate transaction. The rule allows parties that owe mutual debts to state the accounts between them, subtract one from the other, and pay only the balance. The rule is grounded on the absurdity of "making A pay B when B owes A." *Strumpf*, 516 U.S. at 18 (quotation omitted); *In re Bevill, Bresler & Schulman Asset Mgmt.*, 896 F.2d 54, 57 (3d Cir. 1990) (citing *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913)).

17. Setoffs in bankruptcy are "'generally favored,' and a presumption in favor of their enforcement exists." *Carolco Television, Inc. v. Nat'l Broadcasting Co. (In re DeLaurentis Entertainment Group Inc.)*, 963 F.2d 1269, 1277 (9th Cir. 1992); *accord*, *Bohack Corp. v. Borden*, 599 F.2d 1160, 1165 (2nd Cir. 1979); *In re United Marine Shipbuilding, Inc.*, 198 B.R. 970, 978 (Bankr. W.D. Wash. 1996). "The right of setoff is one which is grounded in fairness. It would be unfair to deny a creditor the right to recover an established obligation while requiring the creditor to fully satisfy a debt to the debtor. Hence, the right of setoff is universally recognized." *Turner v. United* States *(In re G.S. Omni Corp.)*, 835 F.2d 1317, 1318 (10th Cir. 1987).

18. "[T]o maintain a right of set-off under section 553, [CMS] must show: 1. A debt exists from [CMS] to [Debtor] and that debt arose prior to the commencement of the bankruptcy case[;] 2. [CMS] has a claim against [Debtor] which arose prior to the commencement of the bankruptcy case[; and] 3. The debt and the claim are mutual obligations." *See Folger Adam Security, Inc. v. Dematteis/MacGregor*, 209 F.3d 252, 262-63 (3d Cir. 2000). Section 553 does not

adversely affect a creditor's right of setoff when (1) the obligations between the debtor and creditor are mutual, (2) the obligations arise prepetition, and (3) the setoff does not fall within the three exceptions outlined in section 553(a)(1)-(3). *In re Dillard Ford, Inc.*, 940 F.2d 1507, 1512 (11th Cir. 1991).

## II. CMS Meets the Requirements for Setoff.

19. This setoff involves mutual debts. Obligations between the debtor and creditor are mutual when both obligations are held by the same parties, in the same right or capacity. *See Matter of Bevill*, 896 F.2d at 59. "The creditor's debt must be owed to the estate of the debtor and the estate's debt must be owed to the creditor." *In re IML Freight*, 65 B.R. 788, 793 (Bankr. D. Utah 1986); *see also Modern Settings, Inc. v. Prudential-Bache Sec, Inc.*, 936 F.2d 640, 648 (2d Cir. 1991). Here, CMS owes Debtor $3,065,990.79 for pre-petition services and Debtor owes CMS $44,095.47 in overpayments for pre-petition services. Thus, the obligations are mutual. *See Cherry Cotton Mills v. United States,* 327 U.S. 536, 539 (1946).

20. The obligations CMS owes Debtor and those Debtor owes CMS arose prepetition. Claims "arise" for bankruptcy purposes when all transactions or acts necessary for liability occur. *Ogle v. Fid. & Deposit Co.*, 586 F.3d 143, 146 (2d Cir. 2009) (citing *Olin Corp. v. Riverwood Int'l (In re Manville Forest Prods.*), 209 F.3d 125, 129 (2d Cir. 2000)); *Braniff Airways, Inc. v. Exxon Co.* 814 F.2d 1030, 1036 (5th Cir. 1987); *see also Matter of United Sciences of America, Inc.,* 893 F.2d 720, 724 (5th Cir. 1990) (claim deemed to arise prepetition if right to payment arises prepetition). Here, the amounts CMS owes Debtor stem from services provided before the Petition Date. *See* CMS Decl. at ¶ 10; Ex. B. Similarly, CMS's claim stems from overpayments made to Debtor for services rendered before the Petition Date.

21. This Motion is without prejudice to the United States' right to later ask the Court to again lift the automatic stay to permit additional setoff should additional reimbursements CMS owes Debtor for pre-petition services be identified and frozen. *See* CMS Decl. at ¶ 11; *see also In re Metropolitan Hosp.*, 110 B.R. at 737 (holding payments on claims for prepetition services constitute prepetition debts of the Secretary to the debtor; consequently, prepetition Medicare underpayment determined postpetition could be set off against prepetition overpayment).

22. No exception contained in section 553 applies here. CMS's claim against Debtor has not been disallowed, *see* 11 U.S.C. § 553(a)(1); CMS did not acquire its claim from an entity other than the debtor, *see* 11 U.S.C. § 553(a)(2); and CMS did not incur the debt to obtain a right of setoff against Debtor, *see* 11 U.S.C. § 553(a)(3).

**III. This Setoff is Justified on Equitable Grounds**.

23. Although permitting setoff is permissive and lies within the equitable discretion of the trial court, s*ee United States v. Norton*, 717 F.2d 767, 772 (3d Cir. 1983), equity directs the relief sought here because the setoff is in the public interest. The government "has a critical interest in maintaining the integrity of the Medicare Program for the benefit of providers, patients, and taxpayers generally." *Neurological Associates - H. Hooshmand v. Bowen*, 658 F. Supp. 468, 473 (S.D. Fla. 1987). The Medicare Program should not pay additional funds to a debtor who has already incurred a substantial Medicare overpayment. Nor has the government engaged in inequitable, illegal, or fraudulent acts in connection with Debtor's participation in the Medicare Program that would preclude equitable relief. *See In re Blanton*, 105 B.R. 321, 337 (Bankr. E.D. Va. 1989). Thus, equity mandates that CMS be permitted to exercise its setoff rights. *See also In re Nuclear Imaging Systems,* 260 B.R. at 738-40, 744 (affirming government's right of setoff of Medicare receivables).

## CONCLUSION

For the above reasons, this Court should lift the automatic stay to permit CMS to set off the Prepetition CMS Accounts it owes Debtor against the Prepetition Overpayments Debtor owes CMS.

                                            Respectfully submitted,

                                            DAVID C. WEISS
                                            UNITED STATES ATTORNEY

                                            By: */s/ Claudia L. Pare*
                                            Claudia L. Pare
                                            Assistant United States Attorney
                                            1313 N. Market Street
                                            P.O. Box 2046
                                            Wilmington, DE 19899
                                            *Counsel for the United States*

Dated: November 18, 2024